## WEST *v.* HIS CREDITORS.

Objections to evidence, though made in the lower court, will not be noticed on appeal, unless brought before the court by a bill of exceptions.

WEST
*v.*
CREDITORS.

The authority of the thing adjudged is merely an exception, which the party who wishes to avail himself of it must oppose, in the manner and at the time prescribed by law. Unless the exception be thus opposed, the party will be presumed to have renounced the advantage resulting from it.

A judgment, rendered in another State against one who had previously made a *cessio bonorum* here, though binding on him personally, is not conclusive against the other creditors, nor against the fund to be distributed here.

Creditors of one who had made a *cessio bonorum* here, residing in another State, where they had acted as trustees under an assignment, made to them in that State, by a third person, to secure the payment of the debt due them by the insolvent, where such assignment was valid by the *lex loci*, must account for the property included in the assignment, or show some legal cause for their failure to reduce it into possession, to entitle them to be put down as creditors on the tableau of distribution of the effects of the insolvent in this State.

APPEAL from the Fifth District Court of New Orleans, *Buchanan*, J. *G. B. Duncan*, *Hornor*, *J. Strawbridge*, *Kearney* and *Cohen*, for the different appellants. The judgment of the court was pronounced by

ROST, J. In addition to those creditors who were allowed a place upon former tableaux in this interminable controversy, several others have presented themselves claiming a part in the fund now to be distributed. Of these new claims, the District Court ordered *William C. Galt* to be placed on the tableau for the sum of $3,000. *J. Barbour*, *Francis Duplessis* and *Adélaide Duplessis*, who are creditors of the insolvent, have appealed from this portion of the decree. The claim of *N. B. Beale* for $7,000, and that of *W. H. Booth* for $5,000, were rejected by the court, and these parties also have appealed.

The evidence adduced by the creditor, *William C. Galt*, in support of his claim, satisfied the district judge; and a careful perusal of it has not enabled us to say that he erred. It is as satisfactory as could be expected at this distance of time; more so, indeed, than that on which many of the claims on the first tableau of distribution were admitted. 1 Annual, 365.

The claims of the appellants, *Beale* and *Booth*, rest on the following facts: Shortly after his failure, the insolvent went to the State of Kentucky, and was sued in the federal court of that State by these parties, as acceptor on bills of exchange, drawn by *Thomas R. West* on him, in their favor. *John K. West* defended the suits, alleging that *Thomas R. West* had made three assignments to these parties, in trust for the purpose of securing them in the payment of several debts due them by *Thomas R. West*, and also by himself, among which were the debts sued upon. The court overruled this plea, and the defendant filed his bill of exceptions to the ruling of the court, but did not carry the case to the appellate tribunal. The plaintiffs subsequently obtained judgments which are final against *John K. West* personally.

These judgments are adduced in evidence of the appellants' claims, and their counsel contends : 1. That, upon the trial of the oppositions, the district judge erred, to their prejudice, in admitting the deeds of trust in evidence to show that their claims had been paid; this issue having previously been made in the federal court, and the judgments rendered thereon forming *res judicata*. 2. That, under the constitution and laws of the United States, those judgments must have the same faith and credit in Louisiana as they have in the State of Kentucky, where they were rendered. 3. That they are the highest evidence of the debts merged in them.

If the first ground were well taken, it is not brought before us by a bill of exceptions, and we cannot notice it. The authority of the thing adjudged produces merely an exception, which the party wishing to avail himself of it must

oppose in the manner and at the time prescribed by law. *Item si in·judicio tecum actum fuerit, sive in rem, sive in personam, nihilominus obligatio durat, et ideo ipso jure de eadem re postea adversus te agi potest; sed debes per exceptionem rei judicatæ adjuvari.* § 5, *Institutes, de Exceptionibus.* Unless the exception *rei judicatæ* is thus opposed, and opposition is made to the admission of the evidence adduced on the second trial, the presumption is that, the party entitled to the exception has renounced the advantage resulting from it. Merlin, Rep. § 20, 4th edition, *verbo* Chose Jugée.

But this ground is untenable. Conceding that the judgments offered in evidence are entitled to the same faith and credit here as they have in Kentucky, it is necessary to ascertain the effect which they would have in that State. Our *cessio bonorum* is unknown to the laws of Kentucky; but assignments under those laws, when assented to by the parties named in them, produce substantially the same legal effects, so far as these parties are concerned. They divest the debtor of the title to the property assigned, and vest it in the trustees for the purposes of the trust. Such was undoubtedly the effect of the deeds of trust made by *Thomas R. West* to the appellants, after they assented to, and agreed to act under, them. Let us suppose then, that a creditor of *Thomas R. West*, not named in the assignments, had subsequently obtained a judgment against him. The question under consideration may be solved, by ascertaining what effect such a judgment would have had in Kentucky, and what rights it would have created in the trust fund.

Under the common law, which prevails in that State, the solution presents no difficulty. An assignment when made in good faith, and assented to by the assignee, is deemed a valid conveyance, founded upon a valuable consideration, and is good against creditors proceeding adversely to it by attachment, or seizure in execution, of the property conveyed. 2 Story's Equity, no. 1036.

Considering that *John K. West* was also divested of his title to the property in the hands of the syndic at the time the judgments of the appellants were obtained, we conclude that those judgments, although binding upon him personally, are not conclusive against the other creditors, nor against the fund to be distributed.

It is urged, as another ground against the admission of the assignments in evidence, that thirty years have elapsed since they were executed, and that that lapse of time should be a sufficient objection. If this were so, it could only be upon the presumption that they had been executed, and that the creditors named in them were paid and satisfied.

It is further urged that the assignments, having been executed by *Thomas R. West*, and not by the insolvent, the creditors of the latter have no right to call the trustees to an account; and that, if they had, it could not be done in this collateral manner. That if, at this late period, the trustees are liable to account to any one, it is to *Thomas R. West*, if he be living, if not, to his legal representatives, or to the creditors named in the assignments. It is said that these parties make no claim, and that the creditors named in the assignments must be presumed to have long since been paid. Under the terms of the assignments the two appellants were the first creditors to be paid; and, if we are to presume that those who came after them have all been satisfied, it is difficult to resist the conclusion that they stand in the same category.

It matters not by whom the assignments were made. They purport to deliver the possession of the property assigned, and were assented to by the

WEST
*v.*
CREDITORS.

appellants, who agreed to act as trustees under them. This assent and this agreement imposed upon them the implied obligation, to perform all those acts which were necessary and proper for the due execution of the trust which they had undertaken. 2 Story's Equity, no. 1268. Theirs is an equitable claim ; and they are bound to do equity before they can be heard. It was incumbent upon them to account for the property assigned to them. It is stated by their counsel, in their brief, that they received none of the real property mentioned in the deeds of trust; but there is no evidence of that fact in the record, and they have failed to show a legal cause for not reducing it into possession. We are therefore of opinion that there is no error, of which they can complain, in the judgment appealed from.

Another opposition was filed by the syndic of *Dorsey* and the heirs of *Hull.* These opponents objected to the sum allowed to the wife of the insolvent. The defendant answered the opposition and pleaded *res judicata,* which plea was sustained by the court below. On the argument of the case, these opponents asked that the judgment sustaining the defendants' plea might be reversed. But as they have not appealed, we cannot act upon their application. *Girod v. Creditors*, 2 Annual 547.